*David G. Mercer,* for appellees.

### 49542. DANIELS v. THE STATE.

PANNELL, Presiding Judge.

Willie Fred Daniels was charged with abandonment of his illegitimate child born of the prosecuting witness who at the time of conception and birth was a married woman. Upon the trial, the prosecutrix testified that she was living with the defendant in a relative's home and sleeping with him in the same bed, both before and after the birth of the child in March. That she had sexual relations with her husband in the November preceding the birth of the child and at a time when she was pregnant with said child, but had no relations with him any other time and that defendant was the father of the child. This testimony was objected to on the grounds (1) public policy prohibited the prosecutrix from giving testimony which had the effect of bastardizing the child, and (2) under the provisions of Code §§ 38-1603 and 38-1606 she was an incompetent witness to testify to such facts. The objection was overruled. Letters were also introduced into evidence purporting to be from the defendant and referring to the child to be born, and subsequently born as "ours." These letters were admitted into evidence over the objection of the defendant, the objection being based upon the contention that the letters were not properly identified as being in the handwriting of the defendant and that the letters were "sponsored" by the prosecuting witness who was herself incompetent to testify as to such facts as were contained in the letters. The defendant was convicted and entered his appeal to this court.

1. The testimony of the prosecuting witness was not inadmissible on the theory that it tended to "bastardize" her child born in wedlock. *Gibbons v. Maryland Casualty Co.,* 114 Ga. App. 788 (3) (152 SE2d 815). This was a case written per curiam and involved the testimony of a mother that her child born in wedlock was the child of a man other than her husband. Upon the death of her husband, she sought compensation for herself and all of

her children, including those which she testified were fathered by men other than her husband. Four judges concurred in the opinion as written, one judge dissented from Division 2, which held that the wife was entitled to compensation, and three judges, including the writer of the opinion in the present case dissented from the ruling in Division 3 of the opinion which ruled the mother's testimony bastardizing some of her children was admissible and there was no public policy of this state prohibiting a married mother from giving testimony tending to bastardize her child.

2. However, was such testimony admissible under the provisions of what is often referred to as our Evidence Act (Code Ann. § 38-1603 et seq.)? We think the answer to this question can be better arrived at by an examination of the history of the law on the subject.

Under the common law, neither a party to the case nor a person interested in the outcome of the case was a competent witness to offer testimony therein. *Graves v. Harris,* 117 Ga. 817, 818 (45 SE 239). Code law in this state as to the competency of witnesses first appeared in the Code adopted by the Legislature of this State by the Act of December 19, 1860 to be effective January 1, 1862, and by the Act of 1861 its effective date was suspended until January 1, 1863. This first Code of Georgia has been referred to on occasions as the Code of 1861 and the Code of 1863, the latter designation of which is now in general use to identify this particular Code. Sections 3772 through 3785 deal with the competency of witnesses and to a great extent followed the common law. It was the Act of 1866 (Ga. L. 1866, p. 138) which became the foundation of a drastic new approach as to the competency of witnesses and admissibility of their testimony. This Act made all persons formerly incompetent, competent witnesses with some exceptions. We are here concerned with that Act and its amendments, and particularly those portions now codified as Sections 38-1603 and 38-1606 of the Code of 1933. The Act of 1866 was in five sections including the repealing clause.

Section 1 of the Act of 1866 contains what is now the opening paragraph of Section 38-1603, plus a proviso or exception. Sections 2 and 4 provided certain exceptions

as to competency. Section 3 reads: "Nothing herein contained shall apply to any action, suit, or proceeding, or bill, in any court of law or equity instituted in consequence of adultery, or to any action for breach of promise of marriage." This Section of the Act of 1866 is now Code § 38-1606, with the clause referring to promises of marriage deleted. Section 1 of the Act of 1866 was contained in the Code of 1868 as Section 3798 and its proviso, together with Section 2 of the Act were paragraphs 1 through 5 of that Section. Section 3 of the Act of 1866 became Section 3799 of the Code of 1868, and Section 4 became Section 3800 of the Code of 1868. These sections respectively were carried forward in the Codes of 1873 and 1882 as Sections 3854, 3855 and 3856. The Act of 1889 repealed paragraph 1 of Section 3854 of the Code of 1882, and enacted in lieu thereof paragraphs (a) through (g); and paragraph (d) of which reads: "Where a person not a party, but a person interested in the result of the suit is offered as a witness, he shall not be competent to testify if, as a party to the cause, he would for any cause be incompetent." This paragraph is now paragraph (4) of Code § 38-1603. The Act of 1889 superseded only one clause of the Act of 1866 and there is nothing in that Act which removes the incompetency of those persons disqualified by other clauses of the Act of 1866 (*Graves v. Rivers*, 123 Ga. 224, 229 (51 SE 318)). It necessarily follows, therefore, that one incompetent to testify prior to that Act, such as a person interested in the outcome or a party to the case, may not testify in "any action, suit, or proceeding in any court, instituted in consequence of adultery," other than testifying to his or her innocence where charged with the offense of adultery. Code § 38-1606. See *Sloan v. Briant,* 56 Ga. 59. This Section applies to both criminal and civil cases. *Howard v. State,* 94 Ga. 587 (20 SE 426). And whether adultery be the immediate or remote cause of the action is immaterial. The words "in consequence" apply as well to initiatory as to the approximate cause of the suit. See *Sloan v. Briant,* supra; *Bishop v. Bishop,* 124 Ga. 293, 296 (52 SE 743); *Lowry v. Lowry,* 170 Ga. 349, 357 (13) (153 SE 11). There is nothing in *Gibbons v. Maryland Casualty Co.,* 114 Ga. App. 788 (152 SE2d 815) ruling to the

contrary. In that case it was held Code § 38-1606 had no application to a case before the Board of Workmen's Compensation, but only to a court proceeding. The *Gibbons* case was a workmen's compensation case. The present case is a court proceeding.

While the prosecuting witness here might not be a party to the criminal prosecution, she is directly interested in the outcome of the case and under the common law and Code law of this State, prior to the Act of 1866 making such persons competent witnesses, and remained incompetent under the Act to testify to her adultery under the exception therein contained. Code § 38-1606. This being an exception to the law making her competent, her competency as a witness was still controlled by the prior law, which made her incompetent. *Sloan v. Briant,* 56 Ga. 59, 61, supra. The trial court erred in overruling the objection of the defendant to the prosecuting witness' testimony tending to show her adultery with the defendant.

3. The testimony of the prosecuting witness, the mother of the child, that she was familiar with the handwriting of the defendant and that the letters introduced in evidence were in his handwriting and were received by her by mail, was sufficient to authorize the introduction over objection as to lack of proof as to the defendant's handwriting. See *Copeland v. State,* 66 Ga. App. 142, 145 (17 SE2d 288); *Ferrell v. State,* 70 Ga. App. 651, 653-4 (29 SE2d 185).

4. Neither were the letters inadmissible because they showed they were written on "work camp" stationery. Even if objectionable for such reason, it appears that the prosecuting attorney offered to read the letters to the jury eliminating the reference to "work camp" which defendant objected to on the ground the letter was the highest and best evidence of its contents. Under these circumstances, we find no error.

*Judgment reversed. Stolz and Webb, JJ., concur.*

SUBMITTED JULY 9, 1974 — DECIDED SEPTEMBER 4, 1974 — REHEARING DENIED SEPTEMBER 24, 1974 — ▮▮▮

*Bennett, Saliba & Wisenbaker, George M. Saliba,* for appellant.
*George T. Talley, Solicitor,* for appellee.